289 So.2d 670

**Sherrill VAN MULLINS**

v.

**STATE.**

**3 Div. 234.**

Court of Criminal Appeals of Alabama.

Jan. 2, 1974.

Rehearing Denied Jan. 29, 1974.

Wendell R. Morgan, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant stands convicted of the offense of buying, receiving, concealing, or aiding in concealing stolen property, and was sentenced to a term of seven (7) years in the penitentiary. At the time he was sentenced he gave notice of appeal but elected to have a working appeal. Upon request he was granted a free transcript and counsel who represented him at trial was appointed to represent him on appeal.

Omitting the formal parts, the indictment reads as follows:

"The Grand Jury of said County charge that, before the finding of this indict-

ment, SHERRILL MULLINS, alias SHERRILL VAN MULLINS, alias SHERILL V. MULLINS, whose name is to the Grand Jury otherwise unknown, did buy, receive, conceal, or aid in concealing 1 Sanyo black and white portable television set, Serial No. KO610717, Model No. 21–V–82 S, of the value of $90.00; and 1 Juliette AM–FM AFC portable stereo, dark wood grain case, Multiples, Model FU 222X, a better description of which is unknown to the Grand Jury, with 2 Juliette dark wood grain speakers, a better description of which is unknown to the Grand Jury, of the value of $110.00, all of the aggregate value of $200.00, the personal property of Charles C. Mills, knowing that they were stolen and not having the intent to restore it to the owner, against the peace and dignity of the State of Alabama."

It is important to remember the model number of the stereo, viz., *222X* as it will be hereinafter referred to on the question of a fatal variance.

On June 11, 1972, the complaining party, Charles Craig Mills, was living with his brother in an apartment on South Highland Court in Montgomery. He and his brother had dates that night. They locked the front and back doors to the apartment and returned around 9:00 P.M. Mills immediately found his stereo and a portable television set missing. He observed the back door which was open and the chain lock was ripped loose. He notified the police department. He described the stereo as follows:

"A. Well, it was a component system. The name was Juliette. It's brown and colored woodgrain. The knobs, or tuning knobs or stuff, were just round. You tune it. The turntable is black plastic, and the speakers are brown woodgrained also with black front-covered speakers, the cover. The stand is mostly metal, with wood crossed over it for support, and it has a record rack underneath for records; and it has a dust

cover, which I have got outside, smoked gray."

He testified that the dust cover was found on the floor near the spot where the stereo had been. The trade name of the television set was "Sanyo".

A day or two later he was called to police headquarters to issue a warrant. When he arrived he saw his stereo but he did not see his television set. He fixed the value of the stereo at $110.00 and the television set at $90.00.

He further testified that he knew appellant prior to the date of the burglary. About two weeks previously, he saw appellant working on his automobile on the street a few houses from Mills' apartment. He invited appellant to his apartment to see a motor that he (Mills) was building. Building motors was Mills' hobby. Appellant stayed in the apartment thirty to forty-five minutes listening to the stereo. During the trial, Mills pointed to appellant and identified him as the man he had invited to his apartment.

Frances Brown Lee testified as a witness for the state. According to her testimony she lived at 2104 Locust Street with her husband, James Albert Lee, on June 11, 1972. Subsequent to that date she divorced her husband who was sent back to the penitentiary because of the incident involving this particular stereo and television set.

She testified that she returned home from church on the above date around 9:30 P.M. and her husband drove up in his car with appellant and his wife. Her husband backed his car about half-way into the garage. Her husband and appellant went into the back of the garage and removed a tarpaulin which was being used to cover a refrigerator stored therein by the landlord. They picked up a stereo and loaded it in the trunk of the car. She asked her husband what they were doing with the stereo and he replied that he was going to sell it

to appellant for forty dollars. She told him he was not going to sell her stereo and her husband said it was not her stereo. She became suspicious and asked if it was a stolen stereo and her husband, appellant, and his wife just laughed. Her husband asked her to ride with them to appellant's house and she refused saying she would not ride with anyone who was drinking but she did agree to follow them in her car. They went to appellant's house at 616 Martha Street where she observed her husband and appellant carry the stereo into the house.

Mrs. Lee reported this to the police department and she was requested to come to headquarters where she signed an affidavit as to the facts within her knowledge. On the strength of this affidavit a search warrant was issued to search appellant's residence where the officer executing the search warrant found the stereo.

Mrs. Lee gave the police officers permission to search her garage where they found and recovered the Sanyo television set.

Both the stereo and the television set were introduced into evidence in the trial below after the same were properly identified by the owner.

Appellant testified in his own defense. The substance of his testimony was that he bought the stereo from James Albert Lee for forty dollars cash; that he had known Lee for sometime as they were in Draper at the same time. He said he did not know the stereo was stolen and at no time did Lee ever indicate to him that this was a stolen stereo.

The evidence developed on this trial revealed that appellant had a long string of felony convictions including grand larceny, burglary, forgery, buying and receiving stolen property, and possession of amphetamines.

During the trial Detective Cunningham testified that he executed the search warrant and picked up the stereo. He checked the model number and found it to be Model FU *2222X* and carried it to headquarters where it was stored in the evidence room. Notwithstanding the one digit difference in the model number as laid in the indictment, *FU 2222X and the model number he took* when he recovered the stereo, *FU 2222X*, he positively identified state's exhibit no. 1 as being the same stereo he removed from appellant's house.

The above discrepancy gave rise to the following motion by appellant:

"MR. MORGAN: All right, sir. I would like to move to exclude the State's Exhibit on the basis: 1, that there is a fatal variance between the pleadings and the proof concerning the identification of the stereo in question, in that testimony from the witness stand clearly indicated that the model number, as was referred to, was FU 2222X, and the indictment contained only three 2's in the description; and for the second grounds, I would like to point out to the court that the indictment alleges that the defendant bought or received or concealed a television set, which is described, which is State's Exhibit No. 3; however, there has been no testimony from the witness stand whatsoever that the defendant had any connection with the television set; and we feel this constitutes a variance between pleadings and proof."

The trial court overruled the motion relating to state's exhibit 1, but granted the motion with reference to state's exhibit 3 At appellant's request, the court gave the following written charge to the jury:

"The court charges the jury that you are not to consider as evidence in this case state's exhibit no. 3, or the evidence which concerns state's exhibit no. 3."

We are urged to reverse this case because of the one digit discrepancy in the model number of the stereo set forth in the indictment and the proof adduced at trial. This is clearly a clerical misprison or typographical error and does not vitiate the in-

dictment. The cases on this proposition are legion in both State and Federal jurisdictions. The following from 42 C.J.S. Indictments and Information § 96, adequately expresses this principle of law:

"If the sense of an indictment is clear, nice or technical exceptions are not to be favorably regarded; and therefore defects in language, defective rhetoric, verbal inaccuracies, or typographical or clerical errors which are explained and corrected by necessary intendment from other parts of the indictment, or errors in spelling which do not obscure the sense are not fatal. * * *"

In Sanders v. State, 278 Ala. 453, 179 So.2d 35, the Supreme Court said:

"The first count of the indictment is in substantial compliance with that form and was not subject to the ground of the demurrer which took the point that it charged Sanders with killing Marks with 'malice a forethought' rather than with 'malice aforethought.' The spacing between the letter 'a' and the letter 'f' was obviously due to the use of a malfunctioning typewritter or the typing was done by an inexperienced typist. That count sufficiently advised Sanders of the decree of homicide with which he was charged. Before an objection because of false grammar, incorrect spelling, or mere clerical error is entertained, the court should be satisfied of the tendency of the error to mislead, or to leave in doubt as to the meaning a person of common understanding reading, not for the purpose of finding defects, but to ascertain what is intended to be charged. (cases cited)"

The count in the indictment did not describe the stereo by model number alone. The description of the alleged stolen property was most specific, viz., "1 Juliette AM–FM AFC portable stereo, dark woodgrain case, multiples, model FU 222X, a better description of which is unknown to the grand jury, with 2 Juliette dark woodgrain speakers, a better description of which is unknown to the grand jury, of the value of $110.00."

This description was sufficient to apprise any person of common understanding of the nature of the charge against him so that he could prepare his defense. Adding another "2" to the numerals would not have given appellant a better understanding of the charge against him.

Affirmed.

All the Judges concur.